IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF MISSISSIPPI
OXFORD DIVISION

**HOMESAFE INSPECTION, INC.**                                                                  **PLAINTIFF**

v.                                                                          **CIVIL ACTION NO. 3:14-CV-209-SAA**

**JOHN HAYES, Individually, and d/b/a
HAYES HOME INSPECTIONS, and
PILLAR TO POST INC., a Delaware
Corporation,**                                                                **DEFENDANTS**

## ORDER

Plaintiff has moved under Rule 25(c) of the FEDERAL RULES OF CIVIL PROCEDURE for leave to substitute in plaintiff's stead the entity it claims is actually the proper plaintiff in this action. Docket 118. The defendants oppose the motion, re-asserting an argument previously made in defendant Pillar to Post's Motion to Dismiss for Failure to State a Claim [Docket 77]: that the action should be dismissed because plaintiff lacked the requisite standing to file this suit in the first place. Docket 122; *see also* Docket 77. This Order addresses both the Motion to Substitute Party and the portion of the Motion to Dismiss which challenged plaintiff's standing to file this suit.

## BACKGROUND

This action stems from the alleged infringement of United States Patent No. 7,445,377 B2 ("the '377 Patent"). Docket 1. The plaintiff, HomeSafe Inspection, Inc. ("HomeSafe 2014"), commenced this action on September 23, 2014, but the background to this case begins with another identically named company, which is also named HomeSafe Inspection, Inc. ("HomeSafe 2003"). Docket 118. HomeSafe 2003 is a Mississippi corporation that was originally incorporated on March 2, 2003. Docket 119, p. 1. On July 20, 2005 the original patentees, Peng Lee and Kevin J. Seddon, assigned "[a]ll rights, title, and interest held under the

'377 patent" to HomeSafe 2003. *Id.* Thus, when it was later legally issued to Peng Lee and Kevin J. Seddon on November 4, 2008 HomeSafe 2003 held all the rights to the '377 Patent. Docket 1-1, Exhibit A.

HomeSafe 2003 was administratively dissolved by the Mississippi Secretary of State on October 1, 2013 for failure to file an annual statement. Docket 119, p. 2. Plaintiff claims that because "the state bureaucracy moved slowly, and HomeSafe 2003 needed to continue its business while it continued to attempt to reinstate HomeSafe 2003," HomeSafe 2014 was formed on March 10, 2014 for that purpose. Docket 119, p. 2. Five days later, on March 15, 2014, HomeSafe 2003 executed an Exclusive License Agreement under which HomeSafe 2014 assumed all of HomeSafe 2003's assets and liabilities, including all rights, title, and interest to the '377 Patent. Docket 89-2, Exhibit B. HomeSafe 2014 filed this action for patent infringement against the defendants a little over six months later, on September 23, 2014. Docket 1. On May 1, 2015, defendant Pillar to Post ("P2P") filed a Motion to Dismiss alleging that HomeSafe 2014 lacked standing to file suit because it did not own all the substantial rights to the '377 Patent. Docket 77.

HomeSafe 2014 now seeks to have HomeSafe 2003 substituted in its place as plaintiff. Docket 118. According to plaintiff, the Mississippi Secretary of State has fully reinstated HomeSafe 2003, all assets and liabilities have been transferred back to HomeSafe 2003, and HomeSafe 2014 has now been dissolved. Docket 118-4, Exhibit D; *see also* Docket 119, p. 2. On the other hand, the defendants argue HomeSafe 2014 did not have standing to file this case because they did not own "all substantial rights to the '377 patent at the time of the filing of this lawsuit." Docket 122, p. 1. In support, the defendants argue the Exclusive License Agreement executed between HomeSafe 2003 and HomeSafe 2014 was not a valid transfer of interest for

two reasons: first, HomeSafe 2003 could not legally enter into the Agreement because the entity was not "authorized to conduct any business as of the date of the alleged transfer" [Docket 122, p. 5]; and, second, the bylaw provisions the HomeSafe 2003 Board of Directors relied on to justify the Agreement did not authorize the board to transfer all substantial rights to the '377 Patent. *Id.*

## DISCUSSION

Under Rule 25(c) "[i]f an interest is transferred, the action may be continued by or against the original party unless the court, on motion, orders the transferee to be substituted in the action or joined with the original party." Plaintiff claims that because the "interest" has been transferred back to the now-reinstated HomeSafe 2003, a substitution of HomeSafe 2003 in place of HomeSafe 2014 is proper under Rule 25. The defendants contest the substitution because they claim HomeSafe 2014 never held an actual interest in the '377 patent which it could then transfer back to HomeSafe 2003. Going further, because it never held an interest to transfer, the defendants claim HomeSafe 2014 lacked the requisite standing to file this suit, and the action should be dismissed. Thus, the question of whether the original transfer from HomeSafe 2003 to HomeSafe 2014 was authorized is potentially dispositive.

Corporations are creatures of statute which did not exist at common law. See MS. Const. Art. 4, § 88; *see also* MS. Const. Art. 7, § 178; Miss. Code Ann. § 79-4-3.02. The effects of an administrative dissolution on a corporation, such as the one encountered by HomeSafe 2003, are governed by Miss. Code Ann. §79-4-14.21. Before 2012, this statute provided that "[a] corporation administratively dissolved continues its corporate existence but may not carry on any business except that necessary to wind up and liquidate its business and affairs under Section 79-4-14.05 and notify claimants under Sections 79-4-14.06 and 79-4-14.07." Miss. Code Ann. § 79-

4-14.21(c) (West 1999). However, this statute was amended in 2012 and under the now-amended version, that particular subsection of the statute was removed altogether. *See* Miss. Code Ann. § 79-4-14.21(c) (West 2015).

Throughout briefings the parties have focused their arguments on whether the original transfer between HomeSafe 2003 and HomeSafe 2014 was valid. Within this debate, the parties seem to have whittled the issue down to whether the initial transfer was an act of "winding up" (which the parties presume would be statutorily valid) or was an act of continuing to conduct business (which the defendants claim would be statutorily invalid). As basis for this, both parties have relied on Miss. Code Ann. § 79-4-14.05, which reads similar to the pre-revision version of § 79-4-14.21 and provides:

> A dissolved corporation continues its corporate existence but may not carry on any business except that appropriate to wind up and liquidate its business and affairs, including . . . [d]isposing of its properties that will not be distributed in kind to its shareholders [and] [d]oing every other act necessary to wind up and liquidate its business and affairs.

Miss. Code Ann. § 79-4-14.05 (West 2015). Relying on this, plaintiff contends that although it was administratively dissolved, the provision authorized HomeSafe 2003's original transfer to HomeSafe 2014 as an "act necessary to wind up and liquidate its business and affairs." *See generally* Docket 118. To the contrary, the defendants argue the transfer was invalid because it was an act taken not to wind up the business, but to allow the continued conduct of HomeSafe 2003's business until it could be reinstated. *See generally* Docket 121.

Although both parties relied on § 79-4-14.05 as authorizing administratively dissolved corporations to wind up their business, these arguments overlook the fact that the statute comes from Article 14, Subarticle A of the Mississippi Code, which pertains only to *voluntarily* dissolved corporations. Miss. Code Ann. § 79-4-14.05. And, unlike a voluntarily dissolved

corporation, HomeSafe 2003 experienced an *administrative* dissolution. Any actions performed by HomeSafe 2003 during dissolution are governed not by Miss. Code Ann. § 79-4-14.05, as the parties suggest, but by Article 14, Subarticle B of the Code, which specifically pertains to *administrative* dissolutions. *See* Miss. Code Ann. § 79-4-14.21. Under the previous version of § 79-4-14.21, there was no question that an administratively dissolved corporation could wind up and liquidate its business and that it retained the right to sue and be sued in its own name for those purposes. *See Royer Homes of Miss, Inc. v. Steiner*, 131 So.3d 592 (Miss. Ct. App. July 16, 2013). However, because the 2012 revisions removed this subsection—and all the specific enabling language—altogether, it is unclear whether an administratively dissolved corporation may now engage in any activity at all once it has been administratively dissolved by the state.

To answer this question the court is guided by rules of statutory construction as they relate to statutory silence or, as in this case, explicit removals of enabling text. The United States Supreme Court has stated that "where Congress includes particular language in one section of a statute but omits it in another . . . , it is generally presumed that Congress acts intentionally and purposely in the disparate inclusion or exclusion." *Keene Corp. v. United States*, 508 U.S. 200, 208 (1993), quoting *Russello v. United States*, 464 U.S. 16, 23 (1993) (citation omitted). Even though the Court has cautioned that "[n]ot every silence is pregnant," *Burns v. United States*, 501 U.S. 129, 136 (1991) (internal citations omitted), the Court has also confirmed that "negative implications raised by disparate provisions are strongest when the portions of a statute treated differently had already been joined together and were being considered simultaneously when the language raising the implication was inserted." *Lindh v. Murphy*, 521 U.S. 320, 330 (1997) (statute was explicit in making one section applicable to habeas cases pending on date of enactment, but was silent as to a parallel provision).

When particular words or concepts are named in a statute while others are not, courts may draw on the doctrine of *expressio unius est exclusion alterius*, or, the "expression of one thing indicates exclusion of the other" to discern legislative intent. 8 MS Prac. Encyclopedia MS Law § 68:87. The Mississippi Supreme Court has stated "where a statute enumerates and specifies the subject or things upon which it is to operate, it is to be construed as excluding from its effect all those not expressly mentioned or under a general clause, those not of like kind or classification as those enumerated." *Southwest Drug Co. v. Howard Bros. Pharmacy of Jackson, Inc.*, 320 So.2d 776, 779 (Miss. 1975). As noted, § 79-4-14.05 of the Mississippi Code continues to permit voluntarily dissolved corporations to engage in winding up activities. Additionally, other sections of the Code also expressly permit limited partnerships, limited liability companies, and nonprofit corporations all to wind up their affairs after dissolution. *See* Miss. Code Ann. § 79-14-802, 79-29-809 & 79-11-349.

The law generally is that, as a creature of statute, "[a] conveyance of property by or to a corporation after its dissolution is invalid and unenforceable, *unless the corporation is disposing of property for the purpose of winding up and liquidating its affairs*." Fletcher Cyc.Corp. §8137 (emphasis added) (citations omitted). Moreover,

> [u]pon dissolution, a corporation may assign its claims as long as the assignment does not contravene any provisions of law. If a corporation is no longer able to bring or maintain an action, however, it cannot assign a cause of action to another entity so that it can bring suit.

16A Fletcher Cyc. Corp. § 8142.

The Mississippi Legislature removed the language which permitted an administratively dissolved company to wind up its affairs in 2012. In this way, the legislature statutorily differentiated administratively dissolved corporations, not only from their voluntarily dissolved brethren, but also from the other forms of business organizations mentioned above. Although the

legislature certainly cannot be expected to anticipate and address all situations, the court is not at liberty to assume it did not mean to do what it did by removing this provision. Because of this, such a removal indicates strongly that the legislature's intent was to prohibit those activities after the effective date of the statutory amendment. Coupled with the fact that the similarly phrased statute applying to voluntarily dissolved corporations was left untouched, the court is left with no choice but to interpret the legislature as having intended to prohibit corporations from engaging in those kinds of activities while administratively dissolved. Thus, the court finds that the original transfer of interest from HomeSafe 2003 to HomeSafe 2014 was an action that was not statutorily permitted.

Having determined that the initial transfer of assets between HomeSafe 2003 and HomeSafe 2014 was not statutorily authorized, the question becomes what effect, if any, does HomeSafe's 2003 reinstatement have on the unauthorized transfer of the '377 patent? The relevant statute provides that when an administratively dissolved corporation has been reinstated:

> (1) The reinstatement relates back to and takes effect as of the effective date of the administrative dissolution;
> (2) Any liability incurred by the corporation . . . after the administrative dissolution and before the reinstatement shall be determined as if the administrative dissolution never occurred;
> (3) The corporation may resume carrying on its business as if the administrative dissolution had never occurred.

Miss. Code. Ann. § 79-4-14.22(c)(1)-(3). The statute is deafeningly silent as to the effect reinstatement has on interim acts by a corporation – other than incurring liabilities -- between the time of administrative dissolution and the time of reinstatement. Thus, the question becomes whether, despite the 2012 removal of the authorizing language from §79-4-14.21, the language in § 79-4-14.22(c) nevertheless contemplates that reinstatement retroactively ratifies, confirms, or validates transactions undertaken by a corporation between administrative dissolution and

7

reinstatement. Plaintiff relies on the reinstatement statute to argue that retroactive application authorizes interim acts. Docket 119, p. 2-3.

Although the Mississippi Supreme Court does not appear to have answered the question explicitly, the Fifth Circuit has considered the role corporate reinstatement plays on interim acts performed by a *suspended* corporation. *PLM v. E. Randle Co.*, 797 F.2d 204 (5th Cir. 1986). In *PLM* the court considered an earlier version of the statute that provides for administrative dissolution under the chapter of the Mississippi Code governing corporation franchise taxes, Miss. Code Ann § 27-13-27. *Id.*

The state of Mississippi had suspended the plaintiff corporation's rights and powers to function due to a failure to file an annual report with the state tax commission. *Id.* at 205. The reinstatement statute provided that upon curing the defects which led to its suspension, a corporation's suspension would be set aside and the corporation would "be restored to all rights of which it was deprived by such suspension, and authorized to resume all activities *as though said suspension had not been imposed*." *Id.,* quoting Miss. Code Ann. § 27-13-27(4) (emphasis added). The plaintiff in *PLM* argued that the statutory language italicized above implied the principle of retroactivity and essentially ratified those interim acts performed during the plaintiff corporation's suspension. *Id.* However, the Fifth Circuit disagreed.

> [Plaintiff's] reading of § 27-13-27(4) would confine the period of suspension to a warning that has no practical effect unless the corporation fails to correct its mistake within the allotted time. This reading ignores the first part of the subsection, which states that when a suspension is set aside, the corporation will be "*restored* to all rights *of which it was deprived*...." (emphasis added). The statute contemplates a restoration following an actual deprivation of rights, not the removal of a threat of deprivation.
> Our interpretation is also consistent with the language [the corporation] relies upon. The phrase "to resume all activities as though said suspension had not been imposed" implies that those activities were interrupted and does not imply that the interruption

> was fictional. The phrase does not imply a retroactive dispensation from the suspension, but only suggests that the *restoration* of corporate powers is complete or unconditional.
>
> The Mississippi Supreme Court examined a similar statute, which used virtually the same language as the one at issue here, and observed that "by virtue of the suspension, Anderson's corporation . . . became functionally unable to operate though it did not cease to exist." *Carolina Transformer Co., Inc. v. Anderson*, 341 So.2d 1327, 1329 (Miss. 1977). The court did not reach the retroactivity issue, but stated that a corporation under suspension had no power to act as a corporation and "was without 'any right to exercise powers' granted it by the State." *Id.* at 1330.

*PLM v. E. Randle Co.*, 797 F.2d 204, 205-06 (5th Cir. 1986). Under this analysis, the Fifth Circuit concluded that the statute, "contemplates a restoration that is *complete and unconditional, but not retroactive.*" *Bryant Const. Co., Inc. v. Cook Const. Co., Inc.*, 518 So.2d 625, 629 (Miss. 1987) (analyzing the Circuit's holding in *PLM v. E. Randle Co.*).

Although some thirty years have passed since *PLM*, the statute in question in that case and Miss. Code Ann. § 79-4-14.22(c) read quite similarly. Just as the plaintiff corporation in *PLM* did, HomeSafe asserts that the statute is retroactive because it provides that "[t]he corporation may resume carrying on its business as if the administrative dissolution had never occurred." Docket 119, pp. 2-3. However, just as *PLM* counsels, the language "as if the administrative dissolution had never occurred" implies that those activities were interrupted and does not imply that that interruption was fictional. Although the current statute contains additional language, the same interpretation has been reiterated by the Fifth Circuit as recently as 2014 under the exact statute this court considers here. *See 4 Const. Corp. v. Superior Boat Works, Inc.*, 579 Fed. Appx. 278, 281 (5th Cir. 2014). Those holdings, coupled with the fact that "Mississippi statutes are presumed to have prospective applicability only, absent an express intent to the contrary," leave little doubt that § 79-4-14.22 does not apply retroactively. *4H*

*Construction Corp. v. Superior Boat Works, Inc.*, 579 Fed. Appx. 278, 281 (5th Cir. 2014), citing *Mladinich v. Kohn*, 186 So.2d 481, 483 (Miss. 1966).

Having determined that the initial transfer between HomeSafe 2003 and HomeSafe 2014 was statutorily invalid and that the reinstatement statute does not apply retroactively, the court turns to the question of standing. "Whether a party has standing to sue in federal court is a question of federal law." *Paradise Creations, Inc. v. UV Sales, Inc.*, 315 F.3d 1304, 1308 (Fed. Cir. 2003), quoting *Baker v. Carr*, 369 U.S. 186, 204 (1962)). "[S]tanding is to be determined as of the commencement of suit." *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 570 n. 5 (1992). "In the area of patent infringement, . . . if the original plaintiff lacked Article III initial standing, the suit must be dismissed, and the jurisdictional defect cannot be cured by the addition of a party with standing." *Schreiber Foods, Inc. v. Beatrice Cheese, Inc.*, 402 F.3d 1198, 1203 (Fed. Cir. 2005). "[I]n order to assert standing for patent infringement, the plaintiff must demonstrate that it held enforceable title to the patent *at the inception of the lawsuit*." *Paradise Creations, Inc. v. UV Sales, Inc.*, 315 F.3d 1304, 1309, citing *Lans v. Digital Equipment Corp.*, 252 F.3d 1320, 1328 (Fed.Cir.2001).

To demonstrate standing under Article III, a plaintiff must satisfy three elements. First, plaintiff must alleged it has suffered an "'injury in fact'—an invasion of a legally protected interest." *Lujan*, 504 U.S. at 560. Second, "there must be a causal connection between the injury and the conduct complained of." *Id.* Third, "it must be 'likely,' as opposed to merely 'speculative,' that the injury will be 'redressed by a favorable decision.'" *Id.* at 561, quoting *Simon v. E. Ky. Welfare Rights Org.*, 426 U.S. 26, 38, 43 (1976). The Patent Act provides only "[a] patentee shall have remedy by civil action for infringement of his patent." 35 U.S.C. § 281 (2000). Under 35 U.S.C. § 100(d), "[t]he word 'patentee' includes not only the patentee to

whom the patent was issued but also the successors in title to the patentee." Exclusive licensees holding all substantial rights to the patent meet this standard. *Prima Tek II, L.L.C. v. A-Roo Co.*, 222 F.3d 1372, 1377 (Fed. Cir. 2000); *see also Rhone-Poulenc Agro, S.A. v. DeKalb Genetics Corp.*, 284 F.3d 1323, 1334 (Fed. Cir. 2002).

Because the initial transfer between HomeSafe 2003 and HomeSafe 2014 has been deemed statutorily invalid and because the reinstatement statute did not ratify that invalid transfer, plaintiff HomeSafe 2014 did not hold enforceable title to the '377 patent at the time this lawsuit was filed. And because HomeSafe 2014 never held enforceable title to the '377 patent, much less at the inception of this lawsuit, plaintiff HomeSafe 2014 did not have the requisite standing to file this suit. For the foregoing reasons, plaintiff's motion for substitution of the plaintiff [Docket 118] is DENIED, and the defendants' Motion to Dismiss for Failure to State a Claim [Docket 77] is GRANTED. The case is dismissed without prejudice. A final judgment of dismissal will be entered this date.

**SO ORDERED**, this, the 28th day of January, 2016.

    /s/ S. Allan Alexander
UNITED STATES MAGISTRATE JUDGE